UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
MICHAEL RUPOLO and CASSANDRA
RUPOLO,

                     Plaintiffs,

       -against-

OSHKOSH TRUCK CORPORATION,

                     Defendant.
-----------------------------------------------------X

**REPORT & RECOMMENDATION**

05-CV-02978 (SLT)(RER)

**RAMON E. REYES, JR., U.S.M.J.:**

       Plaintiffs Michael Rupolo and Cassandra Rupolo brought this action against Defendant

Oshkosh Truck Corporation ("Oshkosh") for injuries Michael Rupolo ("Rupolo") allegedly

sustained at his place of work while operating one of defendant's trucks.[1]  Rupolo alleges two

common law design defect claims under theories of negligence and strict liability.  Jurisdiction is

predicated on diversity of citizenship.  *See* 28 U.S.C. § 1332.  This case was removed to this

Court by Oshkosh pursuant to 28 U.S.C. § 1441.

       Rupolo has moved for a trial by jury and to exclude expert testimony proffered by

Oshkosh.  Oshkosh has moved for summary judgment, arguing that Rupolo cannot establish

causation and that Rupolo fails to raise a genuine issue of material fact on his design defect

claim.  Oshkosh further argues that Rupolo's expert should not be permitted to testify because he

is unqualified, and his report rests on unfounded conclusions and untested opinions.  The

Honorable Sandra L. Townes referred this matter to me for a report and recommendation

pursuant to 28 U.S.C. § 636(b).

---

[1] Cassandra Rupolo's sole claim is loss of consortium.  Since this claim is not relevant to any of
the motions before me, it is not addressed in this Report & Recommendation.

For the reasons set forth below, I respectfully recommend that all three motions be denied. Part One below addresses Rupolo's motion for a jury trial. Part Two discusses Oshkosh's summary judgment motion and focuses on the standard for admitting expert testimony. Finally, Part Three addresses Rupolo's motion to exclude expert testimony.

BACKGROUND

Rupolo worked as a cement truck driver for Jet Redi Mix Concrete Inc. ("Jet Redi") from approximately February 28, 2002, through February 1, 2005. (Def.'s Ex. D., Rupolo Dep. at 29.) On June 1, 2002, Rupolo was allegedly injured in a workplace accident when he fell off of a fixed concrete truck ladder. (Def.'s Local Civil Rule 56.1 Statement of Material Facts and Pl.'s Rule 56.1 Statement (collectively, "56.1 Stmts.") ¶ 1.) This ladder was manufactured and sold by Defendant Oshkosh Truck Corp. ("Oshkosh") as a component of an Oshkosh S-Series concrete mixer. (*Id.* ¶ 2.) Jet Redi had purchased a new 1998 Oshkosh S-series front-loading cement truck in 1997. (Pl.'s Ex. C., Jensen Aff. ¶ 2.) This truck came fully assembled at the time of purchase, and no part of the ladder, catwalk, or ladder assembly of the truck had undergone repairs or alterations before the time of Rupolo's accident. (*Id.* ¶ 5.)

Rupolo was ascending the ladder on the truck on the day of his accident. (Def.'s Ex. D., Rupolo Dep. at 49.) Each ladder step consisted of a flat, level rung covered with beveled holes. (Pl.'s Ex. B., Ojalvo Aff. ¶ 16.) A six-inch wide, L-shaped vertical support bracket ("support bracket") was set back off the top rung of the ladder by 2.6 inches. (56.1 Stmts. ¶ 5.) The location of the support bracket required that a climber's foot rest at an angle instead of flat on the

ball of his foot. (*Id.* ¶ 11.)  As a consequence, Rupolo's boot did not have contact with the slip-resistant parts of the ladder rung. (*Id.*)  According to Rupolo, the step in question was probably slippery at the time of the incident. (56.1 Stmts. ¶ 14.)  Thatcher Peterson, the Product Safety Manager at Oshkosh, also stated that the practice of keeping a wash-down hose on the ladder meant that it was anticipated that the ladder would be wet during normal use. (Pl.'s Ex. F., Peterson Dep. at 37.)  On the day in question, Rupolo fell off the ladder when his left boot slipped off the top step and support bracket. (Def.'s Ex. D., Rupolo Dep. at 51.)

<u>DISCUSSION</u>

<u>PART I</u>

Rupolo brought this action in New York State Court for the County of Suffolk on May 20, 2005. (Compl.)  The complaint did not contain a demand for trial by jury.  Oshkosh timely removed this action to federal court on June 20, 2005, and soon after filed its answer on June 29, 2005.  Rupolo did not demand a jury trial immediately following removal.  Oshkosh was first put on notice of Rupolo's plans to demand a jury trial on January 22, 2007, after discovery had already closed on December 11, 2006. (Docket Entry, Sep. 11, 2006 Minute Entry.)  This date is about twenty months after the original complaint was filed.

At the final pre-trial conference on January 24, 2007, without addressing Rupolo's request for a jury trial, this Court stayed the proceedings pending mediation of the parties' dispute. (Docket No. 20, Minute Entry.)  After two mediation sessions, the parties were unable to reach a settlement, and Oshkosh requested a court conference to address *inter alia* the jury trial issue. (Docket No. 27, Aug. 10, 2007 Status Report ¶ 3.)  After the parties tried again to settle the case without success, the Court included a late jury demand as a contemplated motion at the

final pre-trial conference held on March 6, 2008. (Docket Entry, Mar. 10, 2008 Minute Entry.)

Rupolo renewed its request for leave to make a motion for a jury demand, and Oshkosh indicated

its intent to oppose any jury demand. (Docket No. 36, Mar. 20, 2008 Letter) (Docket No. 37,

Mar. 31, 2008 Letter.) On February 4, 2009, Rupolo filed his motion for a trial by jury.

(Plaintiff's Motion for a Trial by Jury ("Pl.'s Jury Mot.").)

     If this case was still in state court, where it originated, Rupolo would be entitled to have it

tried before a jury. Under New York law, a party has until the eve of trial to make an express

demand for a trial by jury. C.P.L.R. § 4102; *Reliance Elec. Co. v. Exxon Capital Corp.*, 932 F.

Supp. 101, 102–03 (S.D.N.Y. 1996). A case removed to federal court, however, has the problem

of reconciling this generous state court deadline with the federal rules on timely jury demand. A

party who failed to demand a jury trial within the ten days allotted under Rules 38(b) or 81(c) of

the Federal Rules of Civil Procedure must seek the Court's permission pursuant to Rule 39(b).[2]

Rule 39(b) authorizes the Court, in its discretion, to order a jury trial even if a demand was not

properly made. In cases that have not been removed to federal court, however, "mere

inadvertence" of counsel, without more, is an insufficient reason for a court to exercise its Rule

39 discretion to allow an untimely jury demand. *Noonan v. Cunard Steamship Co.*, 375 F.2d 69

(2d Cir. 1967).

     In removal cases, the Second Circuit applies a three-factor test to decide an untimely jury

demand: whether (1) the matter at issue is one traditionally tried to a jury; (2) the parties assumed

---

[2]A jury demand may be filed at any time not later than 10 days after service of the last pleading. FED. R. CIV. P. 38(b). In cases removed to federal court, state jury demand standards apply in the following three situations: (1) all necessary pleadings have been served prior to removal; (2) before removal, a party requested a jury in accordance with state law, or (3) state law does not require the parties to expressly claim trial by jury. FED. R. CIV. P. 81(c)(3).

the case was jury or nonjury, and (3) prejudice will occur to the defendant from granting a jury trial. *See Cascone v. Ortho Pharmaceutical Corp.*, 702 F.2d 389, 393 (2d Cir. 1983) (citing *Higgins v. Boeing Co.*, 526 F.2d 1004 (2d Cir. 1975)); *Nat'l Union Fire Ins. Co. v. L.E. Myers Co.*, 928 F. Supp. 394, 397 (S.D.N.Y. 1996). Some courts also consider whether the moving party justified its late demand with more than attorney negligence. *See Cascone*, 702 F.2d at 393 ("[W]e may not overlook lack of compliance with the federal procedural rules in removed cases") (granting jury demand in part because there was more than "mere inadvertence"); *Richards v. Procter & Gamble Mfg. Co.*, 753 F. Supp. 71, 74–75 (E.D.N.Y. 1991) ("[T]he Court should not exercise its discretion in favor of the plaintiff simply because the case is one which is traditionally tried before a jury and his attorney erroneously relied on state court rules."); *contra Lum v. Discovery Capital Mgmt.*, 625 F. Supp.2d 82, 84 (D. Conn. 2009) ("[I]n a case removed from New York state court, *Noonan's* limitation on a district court's ability to excuse an untimely jury demand does not apply"); *Perelman v. Camp Androscoggin Jr.-Sr., Inc.*, No. 06-cv-13020, 2008 WL 199475, at *3 (S.D.N.Y. Jan. 2, 2008) ("[T]he fact that inadvertence is the only apparent explanation for the untimeliness of plaintiffs' demand does not end our inquiry"). Although the *Noonan* inquiry into attorney negligence has been limited, it remains a valid consideration when deciding whether to grant a late jury demand in removal cases. *See Cascone*, 702 F.2d at 393 ("We do not consign *Noonan* to overruled status. Its holding shall continue to govern cases where it is applicable."); *Richards*, 753 F. Supp. at 74 (denying a jury demand when "the plaintiff's failure to demand a jury trial was caused by counsel's inadvertence and ignorance of the Federal Rules and his total reliance on state court procedures, nothing more."). The *Cascone* court advised district courts to undertake a thoughtful exercise of discretion that

considered each case's circumstances. *See Cascone*, 703 F.2d at 392 (finding "play in the joints" to accommodate untimely jury demand in removal cases). *Cascone* did not bar consideration of that lawyer's negligence.

Applying the three factors to this case suggests that Rupolo's demand should be denied. First, a products liability case seeking damages is usually tried before a jury. *See, e.g., Cascone*, 702 F.2d at 392 ("precisely the sort of litigation which is generally tried to a jury, in the state courts of New York, and in federal courts sitting in diversity"); *Jiminez v. Sullivan*, No. 03-cv-7293, 2004 WL 3019490, at *2 (S.D.N.Y. Dec. 30, 2004) ("personal injury cases such as this are traditionally heard by juries"). Rupolo's case is a type usually heard by juries.

Next, Oshkosh argues that it decided not to depose several individuals because it assumed that this case would be tried as a bench trial. (Defendant's Memorandum of Law in Opposition to Plaintiff's [sic] Motion to File a Late Jury Demand. ("Def.'s Jury Mem.") at 6–7.) This concern is better addressed below as an example of demonstrable prejudice to the Defendant. Oshkosh argues that a jury trial would be more expensive and "will effectively eviscerate much, if not all, of Oshkosh's trial strategy," *id.* at 6, but these conclusory allegations do not explain how Oshkosh assumed this trial would proceed. As much as Oshkosh has provided no evidence that it expected the case to be a bench trial, Rupolo has provided no indication that Oshkosh expected the case to be a jury trial. The proposed Joint Civil Pre-Trial Order, for example, contains no statement by Defendant about whether the case will be tried with a jury. Thus, "it seems fair to characterize the defendant's position as being noncommittal prior to discussing the contents of the Joint Pre-Trial Order." (Plaintiff's Memorandum of Law in Support of Motion for Permission to File Late Jury Demand on Behalf of Plaintiffs (" Pl.'s Jury Mem.") at 18.) As

for the Plaintiffs, the record shows that Rupolo first raised the issue of a jury trial on January 22, 2007, and continued to seek permission to demand until July 30, 2008, when he was granted leave to file a motion.  (Docket Entry, July 30, 2008 Minute Entry.)  The second factor does not resolve the issue and is therefore neutral to this analysis.

Finally, granting a jury demand at this date would prejudice Oshkosh.  A party's decisions not to hire expert witnesses or not to take certain depositions are recurring examples of demonstrated prejudice.  *See, e.g., Espinosa v. Van Dorn Plastic Mach. Co.*, 813 F. Supp. 252, 254 (S.D.N.Y. 1993); *Richards*, 753 F. Supp. at 73; *Elgarhi v. Dreis & Krump Mfg.*, 131 F.R.D. 429, 430–31 (S.D.N.Y. 1990).  Here, Oshkosh has hired an expert engineer, Dr. Salvatore C. Malguarnera, but Oshkosh claims that it would have deposed at least six other individuals had it known it was preparing for a jury trial.  (Def.'s Jury Mem. at 7.)  The Court agrees that Defendant would likely needed to have deposed Rupolo's employer and his doctors and perhaps his co-workers.  It is less likely that Defendant would need to depose the second author of Plaintiff's expert report, Plaintiff's economist, or his life care planner, but the fact that some individuals who needed to be deposed were not validates Oshkosh's prejudice claim.  This claim is reinforced by the fact that Rupolo waited until discovery had already closed to make his jury demand.  *See Sloan v. Delta Air Lines, Inc.*, No. 95-cv-3194, 1996 U.S. Dist. LEXIS 6604, at *6 (S.D.N.Y. May 16, 1996) (holding defendants' prejudice claim sufficient when "the plaintiffs have waited until discovery is virtually complete to press their request").

The three factors militate toward denying Rupolo's late jury demand.  Furthermore, because inexperience and inadvertence were the only reasons Rupolo provided to justify his late demand, this Court is not inclined to grant his request.  The Court recognizes that this may be

counsel's first removal case and indeed the only motion he has ever filed in federal court. (Pl.'s Jury Mem. at 19.) But counsel is associated with a law firm that is regularly in federal court and presumably includes attorneys with whom he could have consulted. Counsel is admitted to the Federal Bar. (Pl.'s Jury Mem. at 18.) An attorney who claims familiarity with products liability law, (Docket Entry 19, Jan. 22, 2007 Letter), should be especially familiar with rules pertaining to jury trials, in whichever court he may be in. For the reasons described above, Rupolo's motion for a jury trial is denied.

PART II

A.    <u>Summary Judgment Standard</u>

A motion for summary judgment will be granted where there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The burden of demonstrating that no material fact exists rests on the party seeking summary judgment. *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citation omitted). In deciding such a motion, the trial court must determine whether a rational juror could find in favor of the non-moving party after drawing all inferences and resolving all ambiguities and drawing all inferences in favor of that party. *Bickerstaff v. Vassar College*, 196 F.3d 435, 444 (2d Cir.), *cert. denied*, 530 U.S. 1242 (2000). Summary judgment will be granted if the opposing party fails to make a showing of an essential element of its case for which it bears the burden of proof. *Celotex*, 477 U.S. at 323.

To overcome a motion for summary judgment, the non-moving party must do more than rely on his pleadings. *Beal v. Lindsay*, 468 F.2d 287 (2d Cir. 1972) ("[T]he opponent cannot rest on the allegations of the complaint but must adduce factual material which raises a substantial

-8-

question of the veracity or completeness of the movant's showing or presents countervailing facts.")  Affidavits, exhibits, and depositions–viewed in the light most favorable to the party opposing the motion–are all competent sources of facts to dispute a motion.  *Rodriguez v. City of New York*, 72 F.3d 1051 (2d Cir. 1995)*; St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000) ("[I]f there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper.")  Expert evidence is particularly important in a products liability case.  *Arnold v. Krause, Inc.*, 232 F.R.D. 58, 68 (W.D.N.Y. 2004) (recognizing that precluding expert testimony in such cases is a "drastic remedy" and precluding only when a "party's conduct represents flagrant bad faith and callous disregard for the federal rules") (citations omitted).  As long as the evidence produced would be admissible at trial, it may be relied upon to overcome a motion for summary judgment. *Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) (citing *Weisgram v. Marley Co.*, 528 U.S. 440, 455–56 (2000)).

A fact issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[N]onmoving parties must do more than simply show that there is some metaphysical doubt as to the material facts, and they may not rely on conclusory allegations or unsubstantiated speculation."  *Jeffreys*, 426 F.3d at 554 (citations and internal quotation marks omitted).  If the opposing party does not set forth specific facts showing that there is a genuine issue for trial, the moving party is entitled to judgment as a matter of law, and summary judgment is appropriate. FED. R. CIV. P. 56(c).

B.    Analysis

As a general rule, summary judgment motions are rarely appropriate in products liability cases. 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2725, at 577 (3d ed. 1998). Design defect cases in particular often include issues of fact over whether a defendant's product was defective and whether possible alternative designs could have avoided the problem. *See, e.g., Garnsey v. Morbank Indus. Inc.*, 971 F. Supp. 668 (N.D.N.Y. 1997); *Serrano v. Harris-Intertype Corp.*, 391 F. Supp. 497 (E.D.N.Y. 1975). Cases that rely heavily on expert opinions may likewise raise issues for trial on the expert's qualifications. *See Sartor v. Arkansas*, 321 U.S. 620 (1944).

1.    Dr. Ojalvo is Qualified, and His Opinion is Relevant and Reliable

Oshkosh challenges the qualifications of Rupolo's expert, Dr. Irving Ojalvo, and argues that his opinions have no basis. Because the majority of Oshkosh's motion is devoted to disqualifying Dr. Ojalvo, I begin by addressing that issue.

To determine admissibility of expert evidence, the court undergoes a two-part process. First, the trial judge must assess whether the witness is qualified as an expert. A witness may be qualified as an expert "by knowledge, skill, experience, training, or education." FED. R. EVID. 702. An expert who has the requisite minimal education and experience in the relevant field is not barred from testifying "merely because he or she lacks a degree or training narrowly matching the point of dispute in the lawsuit." *Canino v. HRP, Inc.*, 105 F. Supp. 2d 21, 27 (N.D.N.Y. 2000); *Lappe v. American Honda Motor Co.*, 857 F. Supp. 222, 226, *aff'd*, 101 F.3d 682 (2d Cir. 1996) ("a lack of specialization affects the weight of the opinion, not its admissibility") (citation omitted).

Second, the judge undertakes a two-step analysis to decide whether the offered evidence rests on a reliable foundation and is relevant. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589–90 (1993); *Donnelly v. Ford Motor Co.*, 80 F. Supp.2d 45, 48 (E.D.N.Y. 1999). Possible factors to consider in determining the reliability of the testimony include "(i) whether the theory or technique relied on has been tested; (ii) whether the theory or technique has been subjected to peer review and publication; (iii) whether there is a known or potential rate of error and the existence and maintenance of standards controlling the technique's operation in the case of a particular scientific technique; and (iv) whether the theory or method has been generally accepted by the scientific community." *Cacciola v. Selco Balers*, *Inc.*, 127 F. Supp. 2d 175 (E.D.N.Y. 2001) (citing *Daubert*, 509 U.S. at 593–94). These factors are not definitive, however, and the flexible inquiry set out by Rule 702 must relate to the facts of the particular case. *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 579, 150 (1999) (citing *Daubert*, 509 U.S. at 593). In sum, the district court has broad discretion to determine what method is appropriate for evaluating reliability under the circumstances of each case when analyzing the admissibility of expert evidence. *Amorgianos*, 303 F.3d at 265. To determine the relevance of the expert's testimony, the court must ask whether the expert's reasoning or methodology can be properly applied to the facts before the court. *Daubert*, 509 U.S. at 592–93; *Stagl*, 117 F.3d at 81.

Dr. Ojalvo is clearly qualified to serve as an expert in biomechanics. Dr. Ojalvo holds three degrees in Mechanical Engineering, including a Doctorate in Mechanical Engineering from New York University. (Pl.'s Ex. B., Ojalvo Aff. ¶ 1.) He is a Licensed Professional Engineer in New York, Connecticut, and Florida, and he has been a member of the Ladder Safety Committee with the American National Standards Institute ("ANSI") for the past decade. (*Id*. ¶¶ 4, 7.) Dr.

Ojalvo has been qualified as an expert in biomechanical engineering in the courts of New York, New Jersey, Connecticut, and Massachusetts, and he has been retained as a forensics engineering expert by both plaintiffs and defendants. (Pl.'s Ex. B, Ojalvo Aff. ¶¶ 12, 14.) Accordingly, defendant's arguments that all of Dr. Ojalvo's expertise concerning ladders was acquired during his work as a forensic engineer for litigation purposes, and that he offers no expertise pertinent to the subject design and related issues, should be rejected. (Defendant's Motion for Summary Judgment ("Def's Mot.") at 10, 20.) His expertise was acquired from his combined education and experience, and any absence of a particular kind of qualification is made up for by other sources. *See Zaremba v. General Motors Corp.*, 360 F.3d 355, 359 (2d Cir. 2004) (excluding proposed expert testimony on the defective design of a car roof and windshield when his qualifications were limited to only a bachelor's degree in engineering, experience designing air bags, and consulting for litigation); *Barban v. Rheem Textile Sys.*, No. 01-cv-8475, 2005 U.S. Dist. LEXIS 5996, at *10 (E.D.N.Y. Feb. 11, 2005) (disqualifying an engineer expert who had never designed any machines, provided testimony, or performed other consulting work specific to the dry cleaning business despite his master's degrees in mechanical and civil engineering and his experience serving as a forensic consultant and giving testimony on design safety); *Lappe*, 857 F. Supp. at 226 (admitting an expert who had a Ph.D. and taught courses in ergonomics, biomechanics, and occupational safety and health because "the expert should not be required to satisfy an overly narrow test of his own qualifications."). Similarly, Defendant's contentions that Dr. Ojalvo has never designed a truck or a ladder for a truck, and that he has never worked for a truck manufacturer, *id.* at 10, are irrelevant. *See Lappe*, 857 F. Supp. at 227 ("Where an expert has the education or background to permit him to analyze a given set of circumstances, "he can

through reading, calculations, and reasoning from known scientific principles make himself very much an expert in the particular product even though he has not had actual experience in its manufacture.") (citation omitted).

The methodology and reasoning used by Dr. Ojalvo are both reliable and relevant. Dr. Ojalvo conducted two inspections of the Oshkosh cement truck on which Rupolo was allegedly injured over the course of his investigation. (Def.'s Ex. G., Ojalvo Report at 1.) As part of his inspections, Dr. Ojalvo consulted two sets of safety regulations: the ANSI Safety Requirements for Fixed Ladders § A14.3-1992 and the U.S. Department of Labor Occupational Safety and Hazard Administration ("OSHA") § 1910. (Def.'s Ex. G., Ojalvo Report at 3.) According to these safety guidelines, which recommend a minimum amount of space for a climber to place his foot on a ladder, Dr. Ojalvo concluded that insufficient space existed on ladder attached to the 1998 S-Series Oshkosh cement truck. (Pl.'s Ex. B., Ojalvo Aff. ¶ 17.) He measured the traction on the top rung when it was dry and when it was wet, and he calculated the coefficient of friction when a climber rested his foot at an angle as opposed to flat on the catwalk. (Def.'s Ex. G., Ojalvo Report at 6.) Dr. Ojalvo reconstructed the incident with a surrogate climber who wore identical boots and scaled the ladder on the same cement truck used by Rupolo. (*Id.*) By comparing recommended measurements in safety regulations, taking measurements, and calculating a climber's ability to rest his weight on the ladder, Dr. Ojalvo reasoned that the low coefficient of friction on the top rung of the ladder likely caused Rupolo to fall off.

Oshkosh argues that Dr. Ojalvo's opinions are untested (Def's. Mot. at 7), and his reconstruction lacks measurements and calculations. (*Id.* at 9.) Oshkosh alleges further that Dr. Ojalvo "failed to even test the subject surface" and that his opinions are nothing more than rank

speculation.  (*Id.* at 11.)  Oshkosh is wrong.  Although Oshkosh fairly disputes the applicability

of these regulations, at the summary judgment stage the Court is concerned only with whether

Dr. Ojalvo used a reliable methodology and reasonably applied that methodology to the facts

before him.   "For the purposes of determining reliability under *Daubert*, a court assesses an

expert's methodology, not his conclusions."  *Colon*, 199 F. Supp. 2d at 81.  Once the district

court has deemed the evidence sufficiently reliable so as to be admissible, it is "bound to

consider the evidence in the light most favorable to plaintiff" when deciding motions for

summary judgment.  *See In re Joint E. & S. Dist. Asbestos Litig.*, 52 F.3d 1124, 1132–34 (2d

Cir. 1995).

Disagreements about the expert's credentials, methodology, or other areas of

qualifications go to the weight, not the admissibility of the evidence and are best addressed

through cross-examination.  *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995).  It

is not the role of this Court to weigh the quality of Dr. Ojalvo's theory; that is the task of the jury.

Based on Dr. Ojalvo's education and experience, and the tests he conducted, this Court finds that

his evidence would be admissible at trial and is therefore properly considered on this motion for

summary judgment.

        2.    <u>Rupolo has Sufficiently Alleged a Design Defect Claim</u>

Oshkosh has challenged Rupolo's ability to establish causation for both his negligence

and strict liability claims.  (Defendant's Motion for Summary Judgment ("Def.'s Mot.") at 7.)  In

a diversity action such as this one, the Court must apply the substantive law of negligence of

New York State.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Ortiz v. Rosner*, 817 F.

Supp. 348, 350 (S.D.N.Y. 1993).  The negligence and strict liability claims will be analyzed

together since they are virtually identical in New York. *See Searle v. Suburban Propane Div. of Quantum Chem. Corp.*, 700 N.Y.S.2d 588, 591 (App. Div. 2000) ("[I]n a design defect case, there is almost no difference between a prima facie case in negligence and one in strict liability.") (quotations omitted).

On a negligence and strict liability claim for design defect, "[t]he plaintiff bears the burden of presenting evidence that (1) the product as designed posed a substantial likelihood of harm, (2) no feasible alternative existed, and (3) the defective design caused plaintiff's injury." *Colon ex rel v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 83 (S.D.N.Y. 2001) (citing *Voss v. Black & Decker Mfg. Co.*, 450 N.E.2d 204 (1983) and *Fane v. Zimmer*, 927 F.2d 124, 128 (2d Cir. 1991)).

### a.     Rupolo Can Show an Unreasonably Dangerous Design

New York has adopted a risk-utility balancing test that combines the "substantial likelihood of harm" element and the "feasible alternative" element into a single "unreasonably dangerous" prong. *See Colon*, 199 F. Supp. 2d at 84, n.24 (citing *Anderson v. Hedstrom Corp.*, 76 F. Supp. 2d 422, 454 (S.D.N.Y. 1999) and *Del Cid v. Beloit Corp.*, 901 F. Supp. 539, 545 (E.D.N.Y. 1995)). Determining whether the disputed design was unreasonably dangerous involves balancing the "foreseeability and gravity of the harm created by the product" against the feasibility of a safer design. *Del Cid*, 901 F. Supp. at 545.

Oshkosh alleges that Rupolo, who relies heavily on the evidence provided by Dr. Ojalvo, cannot show that the ladder was unsafe or that alternative designs were available. But Rupolo has offered specific evidence showing that there is a genuine issue of fact over whether the 1998 Oshkosh S-Series concrete mixer was unreasonably dangerous: Rupolo has identified safety

regulations and standards with which the ladder does not comply, and Rupolo has demonstrated

that Oshkosh was aware that at least some risk was posed by the support bracket position.

Furthermore, Rupolo has provided several examples of alternative designs, including an

alternative design adopted by Oshkosh itself in 2002.  Finally, Rupolo has made a sufficient

showing of the feasibility of design alternatives through a variety of exhibits.

As described above in Part B(1), Dr. Ojalvo relied on the ANSI Standard § A14.3-1992,

and OSHA safety regulation § 1910 while conducting his inspections.  (Def.'s Ex. G., Ojalvo

Report at 3.)  Both the OSHA regulations and the ANSI standards pertain to fixed ladders.

(Def.'s Ex. F., ANSI Standard and OSHA Regulation.)  Oshkosh alleges that the OSHA

regulations and ANSI standards are inapplicable, yet in at least one respect Oshkosh relies on the

OSHA standards to prove that the ladder was not designed defectively.  In Oshkosh's product

audit worksheet, one of the nine perceived threatened hazards is that "the middle rung on railing

superstructure is 24 in from platform floor."  (Pl.'s Ex. J., Product Audit Wksht. # 3.)  In the

same worksheet, the risk was marked acceptable, noting that the "Middle rung meets OSHA

standards."  (*Id*.)  Furthermore, Oshkosh's Product Safety Manager stated that "the OSHA

standards for platforms [are] a good standard for determining where the mid rail on the

superstructure railing should be because it is based on common heights of individuals and is the

history reflection of where the mid rail should be to contain and keep people from falling under it

or through it." (Pl.'s Ex. F,  Peterson Dep. at 63:15–22.)  Accordingly, Rupolo should be

permitted to rely on at least the OSHA standard to argue that the harm of slipping off the ladder

was foreseeable.  Ultimately, it should be for the jury to determine whether it is appropriate to

base a design defect claim on the lack of compliance with the ANSI or OSHA standards.  *See*

*generally Tufariello v. Long Island R. Co.*, 458 F.3d 80, 91 (2d Cir. 2006) (complying with OSHA regulations could provide a reasonable fact-finder with some evidence of a design defect); *Nisanov v. Black & Decker Inc.*, No. 05-cv-5911, 2009 WL 3347088, at *5 (E.D.N.Y. Apr. 10, 2009) (finding of negligence by the jury based in part on plaintiffs' expert testimony that defendant did not comply with applicable ANSI standards).

Next, Oshkosh argues that any alternative designs are based on untested opinions. (Def.'s Mot. at 7.) This is wrong. At least one design difference between the ladders on the Oshkosh S-series front-loading cement truck and the Indiana Phoenix front-loading cement truck is immediately apparent from the photographs submitted by Rupolo. (Pl.'s Ex. G., Indiana Phoenix brochure, ladder close-up). In this exhibit, the fact that no support brackets interfere with the top rung of the ladder is plainly observable. The fact that there is no support bracket interfering with the top rung of the Terex Advance front-loading cement truck is also apparent. (Pl.'s Ex. H. Terex Advance Cement Truck photograph). Dr. Ojlavo's statement that "Mr. Rupolo never could have slipped vertically, as he did in this case, on the alternative ladder designs contained on the Terex-Advance cement truck, the Phoenix cement truck or the 2002 support bracket modification of the Oshkosh ladder, because they each provided flat level surfaces to support the climber's weight" is therefore not mere speculation. (Pl.'s Ex. B., Ojalvo Aff. ¶ 49.)

Further, Rupolo has provided testimony on the differences among the truck designs from individuals other that Dr.Ojalvo: the president of Jet Redi Mix Concrete ("[T]he Terex-Advance front-loading cement truck do not have anything restricting foot space on any rungs of its ladder and the Oshkosh front-loading cement truck has a metal bracket restricting foot space on the top rung of its ladder") (Pl.'s Ex. C., Jensen Aff. ¶ 4) and a co-worker ("In addition to Oshkosh front

loaders I have also driven Terex-Advance front-loader cement trucks. There is no bracket interfering with the placement of my feet on any rung of the ladder on the Terex-Advance front loaders I have driven.") (Pl.'s Ex. D., Brown Aff. ¶ 6) both independently testified to the difference.

Finally, Rupolo has put forth evidence of post-manufacturing changes. These changes are admissible to show that alternative designs were feasible. *Haran v. Union Carbide Corp.*, 497 N.E.2d 678 (N.Y. 1986); *Cann v. Ford Motor Co.*, 658 F.2d 54 (2d Cir. 1981). According to Oshkosh's Product Safety Manager, the 2002 Oshkosh S series truck included a redesigned support bracket: "The change in the vertical bracket configuration gives more space for the left foot...it gives more space to both feet or the left foot..." (Pl.'s Ex. F., Peterson Dep. at 54.) Although this change in design would not be admitted to infer knowledge by Oshkosh of a design defect, it would be admissible to show that there were feasible alternative designs available to Oshkosh. Oshkosh alleged that such a design modification had comparable costs to the 1998 S-Series concrete mixer, stating that cost of manufacturing the post-2002 modified vertical support bracket was "not much." (*Id.* at 72.) I cannot therefore conclude that such a modification would be economically unfeasible.

    b.    Rupolo Can Show Causation

A plaintiff must do more than just identify a defect: he must establish that his injury was proximately caused by the alleged defect. *Kane v. Estia Greek Restaurant*, 772 N.Y.S.2d 59 (App. Div. 2004). The defendant's product need not be "the sole or even the dominant cause of such injuries in order to be considered proximate cause...[w]here more than one factor operates

separately or together with others to cause an injury or disease, each may be a proximate cause if it is a substantial factor in bringing about that injury." *Caruolo v. John Crane, Inc.*, 226 F.3d 46 (2d Cir. 2000) (citing *Voss*, 450 N.E.2d at 207)); *accord Amatulli v. Delhi Construction Corp.*, 571 N.E.2d 645 (1991) (requiring defendant to show that the plaintiff's conduct was the "sole proximate cause of [his or her] injuries" to prevail at the summary judgment stage). Plaintiff, however, is not required to conclusively prove that a defective design caused his injury by eliminating all other potential causes. *Lynn v. Lynn*, 628 N.Y.S.2d 667, 668 (App. Div. 1995). "Usually, whether or not a defect was indeed a substantial factor is a matter for the trier of fact to decide." *Voss*, 450 N.E.2d at 209.

Rupolo has made a sufficient showing of causation. His theory is that the location of the support bracket interfered with the straight-forward placement of his foot because it was set back off the top step of the ladder only 2.6 inches when OSHA and ANSI standards recommend at least five inches. (Pl.'s Ex. B. Ojalvo Aff. ¶ 17.) After inspecting the truck, Dr. Ojalvo observed that the support bracket "prevented Mr. Rupolo from placing the ball of his left foot flat on the top rung of the ladder, thus frustrating both the advantages in the design of the boot and the slip resistant perforations in the rungs of the ladder which enhance the grip of the operator's work boot." (Pl.'s Ex. B., Ojalvo Aff. ¶ 16.) "By placing the bracket where it was, Oshkosh prevented Mr. Rupolo from placing his left foot flat and level...[and] forced Mr. Rupolo to rest his foot at a 28 [degree] angle with the flat horizontal plane." (*Id*. ¶ 35.) Furthermore, Dr. Ojalvo posited that "The location of this wash down hose interferes with the climber's ability to place his right foot on the second rung of the ladder and forces the operator to ascend the ladder right foot first, then left foot, right foot, left foot." (Pl.'s Ex. B., Ojalvo Aff. ¶ 19.) Dr. Ojalvo's opinion was

reinforced by Oshkosh's Product Safety Manager, who agreed that "if one attempted to climb this ladder left foot, right foot, left foot, right foot," that one would have trouble getting the right foot past the superstructure.  (Pl.'s Ex. F., Peterson Dep. at 45: 6–11.)  Dr. Ojalvo thus concluded that "the plaintiff's 'slippage' was caused by the force of gravity on the plaintiff's foot as the plaintiff's foot rested on an inclined surface...the coefficient of friction was too low to prevent the force of gravity from forcing Mr. Rupolo's foot to slip down."  (Pl.'s Ex. B., Ojalvo Aff. ¶ 33.)

After viewing the facts in the light most favorable to the non-moving party, as this Court is obligated to do, I hold that a reasonable juror could find that the design defect alleged by Rupolo may be a substantial factor in causing Rupolo's accident.  It is possible that if the support bracket had been set back by the full five inches, then the surface of the top step might have been completely horizontal, thus allowing Rupolo's left boot to grip the non-slip portion of the step. Rupolo has therefore made a sufficient showing to withstand summary judgment on the factual issue of causation.

***

On a motion for summary judgment, the moving party argues that the only issues presented in a case are questions of law that can be resolved by the judge.  One such question of law is whether an expert's evidence is admissible.  Summary judgment is not the appropriate place to dispute the persuasiveness of submitted evidence; at this stage, the Court will only address whether the expert's proposed testimony passes the admissibility threshold.  The weight and credibility of an expert's methodology or conclusions are factual issues that should be subject to cross-examination and not argued on a motion for summary judgment.

Rupolo has moved to exclude the testimony of Oshkosh's expert engineer, Dr. Salvatore C. Malguarnera ("Dr. Malguarnera"). (Plaintiff's Motion to Exclude Expert Testimony ("Pl.'s Exp. Mot.") at 2.) Based entirely on the deficiencies of Dr. Malguarnera's October 20, 2006 report, Rupolo argues that Dr. Malguarnera is not qualified as an expert and his opinions are not reliable or relevant, and therefore he should not be permitted to testify. (*Id.* at 7–8.)

As explained in Part II above, this Court addresses as a threshold issue whether the proffered expert testimony is admissible. *Brooks v. Outboard Marine Corp.*, 234 F.3d 89, 91 (2d Cir. 2000) (*Daubert* obligates a Court to confirm that admitted expert evidence is reliable and relevant)*; Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("Although disputes as to the validity of the underlying data go to the weight of the evidence, and are for the fact-finder to resolve, questions of admissibility are properly resolved before the Court."). An expert's opinion will be admitted when he is qualified as an expert and his opinion is both reliable and relevant. *See Zaremba*, 360 F.3d at 359. For the foregoing reasons, Rupolo's motion should be denied.

A.    Dr. Malguarnera is Qualified to Render Expert Testimony

Qualification as an expert depends on having education or experience in a relevant field and an area of expertise that helps the expert give an opinion that could assist the trier of fact. *See Zwillinger v. Garfield Slope Housing Corp.*, No. 94-cv-4009, 1998 WL 623589 (E.D.N.Y. Aug. 17, 1998). Dr. Malguarnera has a Master's Degree and a Ph.D. in Mechanical Engineering from the Massachusetts Institute of Technology. (Pl.'s Ex. B, Malguarnera C.V.) He is a Registered Professional Engineer in thirteen states, including New York, and he is a member of

the American Society of Mechanical Engineers.  (*Id.*)  He has published in the area of engineering analysis and materials processing and holds three patents.  (*Id.*)  He works as a technical consultant with SEA, Ltd. and since 1987 has testified regularly in accident cases involving mechanical products.  (*Id.*)  Like Dr. Ojalvo, Dr. Malguarnera does not need more specialized training or experience in ladder design or safety to qualify as a biomechanical expert, *see Lappe*, 857 F. Supp. at 226–27.  Thus, there is no reason to doubt his qualification as an expert in this case.

B.    The Insufficiency of Dr. Malguarnera's Report Should Not Preclude His Testimony

The reliability of an expert's conclusions turns on whether those conclusions can be and have been tested.  *Daubert*, 509 U.S. at 593.  According to his report, Dr. Malguarnera examined three exemplar Oshkosh S-Series concrete mixers in Columbus, Ohio, and reviewed documents related to this litigation, including but not limited to photographs, drawings, an engineering file, the Oshkosh S-Series operator's manual, unspecified interrogatories and answers, Rupolo's deposition transcript, and Dr. Ojalvo's report.  (Plaintiff's Memorandum of Law in Support of Plaintiffs' Motion to Exclude Testimony by Defendant's Expert Engineer ("Pl.'s Exp. Mem."), Ex. A.)

Unlike Dr. Ojalvo's report, which detailed the measurements he took and contained the equations used to calculate stability, figures of alternative fixed ladder designs, and engineering diagrams, Dr. Malguarnera's report contains only a list of documents he reviewed, a recounting of his examination of Oshkosh S-Series mixers, and a summary of ladder-climbing procedures. (Def.'s Ex. G., Ojalvo Report) (Pl.'s Ex. A, Malguarnera Report.)  According to his report, it is

-22-

Dr. Malguarnera's opinion that Rupolo's own actions caused his injuries; that the ladder climbed by Rupolo was safe, and that the ladder did not violate any safety laws or standards. These, however, appear to be conclusory, untested statements. *See Watkins*, 121 F.3d 984 at 988 (rejecting an alternative design because expert made no design drawings and conducted no tests). The only test conducted by Dr. Malguarnera consisted of his climbing up and down the ladders of each exemplar concrete mixer. (Pl.'s Ex. A, Malguarnera Report.) As Oshkosh indicates, climbing up and down a ladder requires no specialized skill or experience. (Def.'s Exp. Mem. at 8.) Although he may qualify as an expert based on his education and general experience, nothing in Dr. Malguarnera's report contributes "scientific, technical, or other specialized knowledge [that] will assist the trier of fact" determine causation. Fed. R. Civ. P. 702. *Fane v. Zimmer, Inc.*, 927 F.2d 124 (2d Cir. 1991) (excluding expert testimony as unnecessary when no special knowledge or skill is needed to understand the fact in issue).

Nevertheless, and while Dr. Malguarnera's report is admittedly inadequate, it is possible that Dr. Malguarnera's expert opinions are reliable and relevant on bases other than those included in his report. For example, he may have consulted other material or conducted other tests not mentioned in his report. A complete record in this case would have included a deposition of Dr. Malguarnera in which Plaintiff fully explored his supporting methodology and facts. (See Def.'s Exp. Mem. at 2–3.) Rupolo failed to do this. The Court thus cannot properly evaluate Dr. Malguarnera's opinion.

Further, despite receiving Dr. Malguarnera's four-page report or October 23, 2006, Rupolo raised no objections to the report until March 20, 2008, and then only in opposition to

Oshkosh's request for a premotion conference. (Docket Nos. 34 and 36). At no time prior to that did Rupolo seek a more complete disclosure from Oshkosh under Rule 26. (*Id.* at 2–3.) Although there do not appear to be any deadlines for objecting to the sufficiency of an expert disclosure in the Federal Rules of Civil Procedure or the scheduling orders in this case, waiting nearly 1 ½ years to object to an expert report submitted as part of a standard discovery disclosure is inexcusable. Here, the deadline for discovery had been extended repeatedly. (Docket Entries, Mar. 31, 2006 Order; Apr. 10, 2006 Minute Entry; July 10, 2006 Order; Sept. 11, 2006 Minute Entry.) Rupolo easily could have objected to the sufficiency of Dr. Malguarnera's report prior to March 20, 2008, thereby giving Oshkosh a chance to supplement the report prior to the much extended discovery deadline. This is especially so given the fact that Oshkosh first objected to the sufficiency of Dr. Ojalvo's proposed testimony as early as January 17, 2007. (Docket No. 16).

In any event, if this case proceeds to a bench trial, as recommended above in Part I, the Court should have the opportunity to hear Dr. Malguarnera's testimony and give it whatever weight it deserves, if any. Such a course of action would be entirely consistent with the federal court's preference for deciding cases on the merits. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Kalika*, 2007 WL 4326920, at *5 (E.D.N.Y. Dec. 7, 2007) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993)); *Jet Star Enterprises Ltd. v. CS Aviation Services*, 2004 WL 350733, at *2 (S.D.N.Y. Feb. 25, 2004).

Accordingly, I respectfully recommend that Plaintiff's motion to exclude Dr. Malguarnera's testimony be denied.

<u>CONCLUSION</u>

For the foregoing reasons, I respectfully recommend that Oshkosh's motion for summary judgment be denied.  I further recommend that both Rupolo's motion for a jury trial and his motion to exclude Dr. Malguarnera's testimony be denied.  Any objections to this Report and Recommendation must be filed with Clerk of the Court and the Honorable Sandra L. Townes within ten business days of receiving this Report and Recommendation.  Failure to file timely objections may waive the right to appeal the District Court's Order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

**Dated:**      **October 27, 2009**
                **Brooklyn, New York**

<u>Ramon E. Reyes, Jr.</u>

**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**