UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
MICHAEL RUPOLO and CASSANDRA RUPOLO,

                                        Plaintiffs,                    **MEMORANDUM AND ORDER**

            – against–                                                05-CV-2978 (SLT) (RER)

OSHKOSH TRUCK CORPORATION,

                                        Defendant.
-----------------------------------------------------------------x
**TOWNES, United States District Judge:**

        Michael Rupolo ("Mr. Rupolo") and his wife, Cassandra, (collectively, "Plaintiffs")

bring this products liability action to recover for injuries Mr. Rupolo sustained when he fell from

a ladder on the front of a cement truck manufactured by defendant Oshkosh Truck Corporation

("Defendant" or "Oshkosh"). On October 27, 2009, Magistrate Judge Ramon E. Reyes, Jr.,

filed a report and recommendation (the "R&R"), recommending that this Court deny (1)

Plaintiffs' motion to file a late demand for a jury trial, (2) Plaintiffs' motion to exclude expert

testimony offered by Defendant, and 3) Defendant's motion for summary judgment. Both

Plaintiffs and Defendant subsequently filed objections to the R&R pursuant to Fed. R. Civ. P.

72(b)(2). For the reasons set forth below, this Court accepts Judge Reyes' recommendations

concerning Plaintiffs' motion to exclude Defendant's expert witness and Defendant's motion for

summary judgment. This Court agrees with Plaintiffs' contention that the motion to file a late

jury demand was never formally referred to Judge Reyes, and grants that motion.

## *BACKGROUND*

        Mr. Rupolo worked as a cement truck driver for Jet Redi Mix Concrete, Inc. ("Jet Redi")

from approximately February 28, 2002, through February 1, 2005. (Deposition of Mr. Rupolo,

dated June 2, 2006 ("Rupolo Dep.") at 29.[1]  In the course of his work, Mr. Rupolo operated a

1998 S-Series front-loading cement truck manufactured by Defendant.  Affidavit of Jet Redi

President Steven Jensen ("Jensen Aff.") at ¶ 2.[2]  This truck came fully assembled at the time of

purchase with a ladder mounted on the front.  *Id.* at ¶¶ 3-4.

According to Mr. Rupolo, he was ascending that ladder on June 1, 2002, when his left

boot slipped off the top step and support bracket.  No part of the ladder, catwalk, or ladder

assembly of the truck had undergone repairs or alterations before the time of Mr. Rupolo's

accident.  *Id.* at ¶ 5.

In May, 2005, Plaintiffs commenced a personal injury action against Defendant in the

Supreme Court of the State of New York, Suffolk County.  The complaint did not contain a

demand for a jury trial.  Defendant timely removed this action to federal court on June 20, 2005,

and on June 29, 2005, served an answer on Plaintiffs which also did not include a demand for a

jury trial.  Plaintiffs did not timely demand a jury trial following service of this answer, as

required by Fed. R. Civ. P. 38.  Plaintiffs' counsel represents that he did not realize his error

until he received Defendants' submissions relating to the Joint Pretrial Order.

On January 22, 2007 – the very date on which the parties filed their proposed Joint

Pretrial Order – Plaintiffs' counsel wrote a letter to Judge Reyes, requesting "a conference to ask

permission to make a motion to have this matter tried by a jury."  Letter to Hon. Ramon E.

Reyes, Jr., from Robert J. Poblete, Esq., dated Jan. 22, 2007, at 1.  In that letter, Plaintiffs'

---

[1]This deposition is attached as Exhibit D to the Declaration of Carl J. Schaerf in Support of
Defendant's Motion for Summary Judgment.

[2]This affidavit is attached as Exhibit C to the Declaration of Robert J. Poblete in Opposition
to Defendant's Summary Judgment Motion.

counsel noted that 99 percent of his practice had been in New York State courts, and that New York law does not require that a jury demand be made until after the close of discovery. Plaintiffs' counsel further alleged that "[n]o discussion [had] ever been conducted in this case which would have alerted [him] to the fact that . . . a Jury Demand should have already been filed . . . ." *Id.* at 2.

Two days after Plaintiffs filed this letter, Judge Reyes stayed this case pending mediation. *See* Minute Entry dated Jan. 24, 2007. Over the course of the next year, the parties attempted to settle this action. *See* Letter to Hon. Ramon E. Reyes, Jr., from Carl J. Schaerf, Esq., dated Feb. 28, 2008. After mediation proved unsuccessful, both parties filed premotion conference requests and Plaintiffs renewed their request for permission to move for a trial by jury.

This Court granted the pre-motion conference requests and on February 4, 2009, Plaintiffs filed their motion for a trial by jury. On the same day, Defendant moved for summary judgment, primarily arguing that Plaintiffs lacked evidence to prove that the design defects relating to the subject ladder were a competent producing cause of Mr. Rupolo's accident. As part of that motion, Defendant argued that Plaintiffs' expert, Dr. Irving U. Ojalvo, should not be permitted to testify, arguing both that he was unqualified and that his report rested on unfounded conclusions and untested opinions.

Plaintiffs cross-moved to exclude the testimony of Defendant's expert, Dr. Salvatore C. Malguarnera, on the ground that Defendant's expert's opinion lacked the degree of reliability and relevancy required by Fed. R. Evid. 702. By order dated September 2, 2009, this Court referred Defendant's motion for summary judgment and Plaintiffs' motion to exclude expert testimony to Judge Reyes for a report and recommendation. A second order, dated September

28, 2009, consolidated for administrative purposes Plaintiffs' motion for a trial by jury and their motion to exclude expert testimony. However, nothing in that order expressly referred Plaintiffs' motion for a trial by jury to Judge Reyes.

### The Report and Recommendation and Objections Thereto

On October 27, 2009, Judge Reyes issued his R&R. Judge Reyes construed this Court's September 28, 2009, order as implying that this Court intended to refer to him Plaintiffs' motion for trial by jury, and recommended that that motion be denied. Judge Reyes also recommended denying Defendant's motion for summary judgment. He found that Plaintiffs' expert, Dr. Ojalvo, was qualified, and that his opinions were both relevant and reliable pursuant to Fed. R. Evid. 702. R&R at 11-14. The magistrate judge further found that Plaintiffs had demonstrated that a genuine issue of material fact existed with respect to whether Defendant's 1998 S-series concrete mixer was "unreasonably dangerous," *Id.* at 15 (citing *Del Cid v. Beloit Corp.,* 901 F. Supp. 539, 545 (E.D.N.Y. 1995)), and that Plaintiffs had adduced sufficient evidence of causation to allow a reasonable fact-finder to conclude that the design defect alleged by Plaintiffs may have been a substantial factor in causing Mr. Rupolo's accident. *Id.* at 19-20. Finally, Judge Reyes denied Plaintiffs' motion to exclude the testimony of Defendant's expert engineer, Dr. Malguarnera. *Id.* at 21.

Ten business days after Judge Reyes filed his R&R, Defendant filed a document entitled, "Oshkosh Truck Corporation's Rule 72 Objections To Magistrate Judge Reyes' Report and Recommendation" ("Defendant's Objections"), challenging that portion of the R&R which recommended denying Defendant's motion for summary judgment. Likewise, Plaintiffs filed two documents, both entitled "Plaintiffs Michael and Cassandra Rupolo's Rule 72 Objections to Magistrate Judge Reyes' Report and Recommendation." The first, a 23-page memorandum of

4

law docketed as Document # 62 ("Plaintiffs' Objections, Doc. 62"), challenges that portion of the R&R which recommended denying Plaintiffs' motion to file a late jury demand. The second, a seven-page memorandum of law docketed as Document # 63 ("Plaintiffs' Objections, Doc. 63"), challenges that portion of the R&R which recommended denying Plaintiffs' motion to exclude Defendant's expert's testimony. For reasons of efficiency, the Court will discuss the specific arguments raised in those objections and the responses in the discussion, below.

## DISCUSSION

Before turning to those objections which address specific portions of the R&R, this Court will address the objections relating to the scope of its referral to the magistrate judge. This Court's referral order dated September 2, 2009, specifically "ordered that Defendant's Motion for Summary Judgment and Plaintiff[s'] Motion to Exclude Expert Testimony [were] referred to Magistrate Judge Ramon E. Reyes for [a] report and recommendation." However, on September 28, 2009, this Court entered an order consolidating Plaintiffs' Motion for a Trial by Jury with their Motion to Exclude Expert Testimony. That order further stated that both motions remained pending and would "be decided with defendant's motion for summary judgment."

Judge Reyes and Plaintiffs construed the September 28 order as modifying the referral order, albeit in very different ways. Judge Reyes tacitly construed the September 28 order as expanding the scope of the referral order to include Plaintiffs' motion to file a late jury demand. Plaintiffs, on the other hand, construed the September 28 order as limiting the scope of the referral order to Defendant's Motion for Summary Judgment. Accordingly, Plaintiffs now object to the R&R on the ground that this Court did not refer either Plaintiffs' motion to file a late jury demand or their motion to exclude expert testimony to Judge Reyes.

In fact, the September 28 order was entered solely for obscure administrative purposes, which need not be discussed here. It was not intended either to expand or to limit the scope of the referral order, and made no reference to that order. Therefore, Plaintiffs' assertion that Judge Reyes exceeded the scope of the referral order by deciding their motion to exclude expert testimony is without merit, but Plaintiffs' objection to that portion of the R&R that adjudicated their motion to file a late jury demand is well-taken. Accordingly, this Court need not consider Plaintiffs' objections to that portion of the R&R which recommended denying Plaintiffs' motion to file a late jury demand, but will adjudicate that motion *de novo* in Section IV, below.

*I. The Standard of Review under 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(3)*

With respect to Plaintiffs' remaining objections, this Court applies the standard of review set forth in 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(3). Under both of these provisions, a district court must "make a de novo determination of those portions of the report or . . . recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see* Fed. R. Civ. P. 72(b)(3). Upon de novo review, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

*II. Objections to Experts' Testimony*

This Court turns first to both parties' objections to the portions of the R&R which recommended denying the cross-motions to exclude the testimony of the opposing party's expert. Rule 702 of the Federal Rules of Evidence, which governs the admissibility of experts and other scientific or technical expert testimony, provides as follows:

6

> If scientific, technical, or other specialized knowledge will assist
> the trier of fact to understand the evidence or to determine a fact in
> issue, a witness qualified as an expert by knowledge, skill,
> experience, training, or education, may testify thereto in the form
> of an opinion or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product of reliable
> principles and methods, and (3) the witness has applied the
> principles and methods reliably to the facts of the case.

Rule 702 imposes a two-step analysis on the trial court. First, the court must "make an initial determination as to whether the proposed witness qualifies as an expert." *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 352 (S.D.N.Y. 2003) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). A witness may be qualified as an expert "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. An expert is not barred from testifying "merely because he or she lacks a degree or training narrowly matching the point of dispute in the lawsuit." *Canino v. HRP, Inc.*, 105 F. Supp. 2d 21, 27 (N.D.N.Y. 2000). "In a product liability action, an expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization affects the weight of the opinion, not its admissibility." *Lappe v. Am. Honda Motor Co.*, 857 F.Supp. 222, 226 (N.D.N.Y. 1994); *see also McCullock v. H.B. Fuller Co.* 61 F.3d 1038, 1043 (2d Cir. 1995) (defendant's objection to plaintiff's expert's academic training was held to be properly explored on cross-examination and to affect the weight of the testimony, not its admissibility).

Second, the court must inquire into whether the testimony provided by that expert is both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). "Though the weight given to expert testimony should be left to the finder of fact, expert testimony should be excluded altogether if it is 'speculative' or 'conjectural' or if it is based on assumptions 'so unrealistic and contradictory as to suggest bad faith.'" *Baker*, 254 F. Supp. 2d at

353 (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996)). While the proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied, the district court is the ultimate "gatekeeper." *See* Fed. R. Evid. 104(a); *United States v. Cruz*, 363 F.3d 187, 192 (2d Cir. 2004). In assessing reliability, district courts may consider: "(i) whether the theory or technique relied on has been tested; (ii) whether the theory or technique has been subjected to peer review and publication; (iii) whether there is a known or potential rate of error and the existence and maintenance of standards controlling the technique's operation in the case of a particular scientific technique; and (iv) whether the theory or method has been generally accepted by the scientific community." *Cacciola v. Selco Balers, Inc.*, 127 F. Supp. 2d 175, 180 (E.D.N.Y. 2001) (citing *Daubert* 509 U.S. at 593-94). The district court, however, has broad discretion with respect to the admission or exclusion of expert evidence. *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp. LLC*, 571 F.3d 206, 213 (2d Cir. 2009).

Even if a witness is qualified to testify as an expert at trial, a party intending to call a witness must disclose the expert's identity to the other parties prior to trial. Fed. R. Civ. P. 26(a)(2)(A). In addition, if the witness is one retained or specifically employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony, "this disclosure must be accompanied by a written report . . . prepared and signed by the witness . . . ." Fed. R. Civ. P. 26(a)(2)(B). The report must contain, *inter alia*, "(i) a complete statement of all opinions the witness will express and the basis and reasons for them [and] (ii) the data or other information considered by the witness in forming them." *Id.* A party must make these disclosures at the times and in the sequence that the court orders. Fed. R. Civ. P. 26(a)(2)(C).

8

"If a party fails to provide information or identify a witness as required by Rule 26(a) . . ., the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). However, while the express provisions of Rule 37(c)(1) suggest that "[t]he exclusion of undisclosed information is automatic" unless the non-disclosing party demonstrates that the failure to disclose was substantially justified or that the failure was harmless, preclusion is not generally ordered. *Atkins v. County of Orange*, 372 F. Supp. 2d 377, 396 (S.D.N.Y. 2005); *see also Sterling v. Interlake Ind., Inc.*, 154 F.R.D. 579 (E.D.N.Y. 1994) (noting that the imposition of Rule 37 sanctions is a "drastic remedy" that should only be applied "in those rare cases where a party's conduct represents flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure"). The Second Circuit has stated that the following factors are relevant in determining whether preclusion is appropriate: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Softel, Inc. v. Dragon Med. & Scientific Communications, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (citing *Outley v. City of New York*, 837 F.2d 587, 590-91 (2d Cir. 1988)).

Applying these principles, Judge Reyes found Plaintiffs' expert, Dr. Ojalvo, to be qualified pursuant to Fed. R. Evid. 702. R&R at 11. Relying primarily on *Lappe,* 857 F.Supp. at 226, Judge Reyes rejected Defendant's arguments that Dr. Ojalvo lacked expertise pertinent to the subject design and related issues. R&R at 11-12. Additionally, the magistrate judge found the methodology and reasoning used by Dr. Ojalvo to be both reliable and relevant. *Id.* at 13. Emphasizing that Dr. Ojalvo tested the Oshkosh cement truck, consulted two sets of safety

9

regulations, reconstructed the incident with a surrogate climber, took measurements and conducted various calculations, Judge Reyes concluded that Dr. Ojalvo's report was based on a reliable methodology and should be admissible at trial. *Id.* at 13-14.

Judge Reyes also denied Plaintiffs' motion to exclude the testimony of Defendant's expert engineer, Dr. Malguarnera. *Id.* at 21. Judge Reyes first found Dr. Malguarnera to be a qualified expert under Rule 702, emphasizing that he had the necessary education and experience in the field of mechanical engineering to provide an opinion that could assist the trier of fact. Although Judge Reyes found Dr. Malguarnera's report to be "inadequate," noting that "nothing in Dr. Malguarnera's report contributes 'scientific, technical, or other specialized knowledge [that] will assist the trier of fact to determine causation,'" *Id.* at 23, he noted that Plaintiffs made no objections to the adequacy of the report until they filed their opposition to Defendant's pre-motion conference request and had never sought more complete disclosure pursuant to Fed. R. Civ. P. 26. Noting that it was possible that Dr. Malguarnera's expert opinions were reliable and relevant on bases other than those included in his report, R&R at 23-24, and characterizing Plaintiffs' failure to object to the adequacy of the report for nearly one and one-half years after receiving it as "inexcusable," *Id.* at 24, Judge Reyes tacitly found that it was inappropriate to preclude Dr. Malguarnera's testimony under Fed. R. Civ. P. 37 as a sanction for his report's inadequacy.

### *The Parties' Objections to the R&R*

Both parties object to Judge Reyes' findings. Defendant challenges Judge Reyes' finding that Dr. Ojalvo is qualified to testify as inconsistent with the current trend in this District which precludes the testimony of "jack of all trades" experts. Defendant's Objections at 16-17. Specifically, Defendant claims that Dr. Ojalvo's lack of specific knowledge and experience in

the field of trucks or ladders makes him a "quintessential expert for hire." Defendant's Objections at 12-15. Defendant also claims that Dr. Ojalvo's opinions on causation fail to meet the standard of reliability set forth in *Daubert* and *Kumho Tire*. Specifically, Defendant argues that Dr. Ojalvo has not disclosed any drawings, models, calculations or tests to prove that an alternative design would have prevented the accident and that Dr. Ojalvo's opinions are, therefore, insufficiently reliable. Defendant's Objections at 4-5.

Plaintiffs, on the other hand, object to Judge Reyes' recommendations regarding Dr. Malguarnera. Arguing that "it is pure conjecture as to whether or not Dr. Malguarnera consulted other material or conducted any other tests not mentioned in his report," Plaintiffs contend that Defendant fails to establish by preponderance of proof the admissibility of Dr. Malguarnera's report pursuant to Fed. R. Evid. 104(a). Plaintiffs' Objections, Doc. 63, at 1. Plaintiffs further argue that Dr. Malguarnera's report fails to provide adequate disclosure of the material considered, reviewed, or generated by the expert in forming his opinion as required by Fed. R. Civ. P. 26(a)(2)(B). Plaintiffs' Objections, Doc. 63, at 3-4. Alleging that they will suffer undue prejudice if Dr. Malguarnera is permitted to testify about undisclosed tests he conducted, Plaintiffs conclude that Defendant's expert report must be excluded pursuant to Fed. R. Civ. P. 37(c)(1). *Id.* at 5.

### Dr. Ojalvo

With respect to Defendant's objections regarding Dr. Ojalvo's qualifications, the Court finds no merit in Defendant's argument that Dr. Ojalvo is a "jack of all trades" whose expertise concerning ladders was acquired during his work as a forensic engineer for litigation purposes. Indeed, beyond his wide knowledge in biomechanics stressed by the magistrate judge in his report, R&R at 12-13, Dr. Ojalvo has been a full voting member of the American National

11

Standards Institute's Ladder Safety Committee for over a decade. Affidavit of Dr. Irving U. Ojalvo in Opposition to Defendant's Motion for Summary Judgment ("Ojalvo Aff.") at ¶ 7.[3] Dr. Ojalvo has consulted on numerous designs for structural integrity and safety and investigated over 100 accidents involving falls from ladders. *Id.* at ¶¶ 9-10. In addition, Dr. Ojalvo has had three technical papers published in peer-reviewed journals that deal with ladder safety and he has had peer-reviewed papers published in the technical area of biomechanics. *Id.* at ¶¶ 11-12. Finally, Dr. Ojalvo has also achieved the highest level of membership (Life Fellow) in the American Society of Mechanical Engineers and taught courses in the laws of mechanics and design as a professor at Columbia University. *Id.* at ¶¶ 5-6.

Defendant's argument that Dr. Ojalvo is unqualified because he has never designed a truck or a ladder for a truck and has never worked for a truck manufacturer is unpersuasive. Since Dr. Ojalvo has a broad educational background, "he can through reading, calculations, and reasoning from known scientific principles make himself very much an expert in the particular product even though he has not had actual knowledge in its manufacture." *Lappe*, 857 F.Supp. at 226-27. Accordingly, the Court accepts Judge Reyes' recommendation that Dr. Ojalvo be found qualified to testify as an expert.

This Court further rejects Defendant's contentions that Dr. Ojalvo's causation theory is based on untested opinions and is, therefore, unreliable and irrelevant under the standard set forth in *Daubert* and *Kumho Tire*. Contrary to Defendant's arguments, Dr. Ojalvo conducted two inspections of the Oshkosh cement truck and consulted safety regulations promulgated by the American National Standards Institute (ANSI) and the Occupational Safety and Health Administration (OSHA) before concluding that the ladder's design "was clearly inadequate to

---

[3]This affidavit is attached as Exhibit B to the Declaration of Robert J. Poblete in Opposition to Defendant's Summary Judgment Motion.

permit Mr. Rupolo to maintain the bulk of his weight on the ball of his left foot." Ojalvo Aff. at

¶ 17. Dr. Ojalvo reached this conclusion by measuring the coefficient of friction on flat surfaces

of the ladder assembly, calculating the angle at which a climber's boot would rest on the top

rung, and determining the coefficient of friction on the top rung. *Id.* at ¶ 23. Dr. Ojalvo found

that when the top rung was wet, the coefficient of friction was too low to prevent slippage, and

concluded that those aspects of the ladder's design which prevent a climber from placing his foot

flat on the top rung likely caused Mr. Rupolo's accident. *Id.* This Court concurs with Judge

Reyes' conclusion that Dr. Ojalvo used a reliable methodology and reasonably applied that

methodology to the facts before him, and adopts Judge Reyes' recommendation that Dr. Ojalvo

not be precluded from testifying.

### *Dr. Malguarnera*

The Court also rejects Plaintiffs' objections to Judge Reyes' recommendations regarding

Dr. Malguarnera, and declines to preclude Dr. Malguarnera's testimony as a sanction under Fed.

R. Civ. P. 37(c)(1). This case is similar to *Atkins*, 372 F. Supp. 2d 377, in which the defendants

sought to preclude plaintiffs' expert witness testimony based on Rule 26(a)(2) and Rule 37(c)(1).

The defendants in *Atkins*, like Plaintiffs herein, claimed that the disclosure concerning plaintiffs'

expert was inadequate. *Atkins,* 372 F. Supp. 2d at 396. The trial court in *Atkins* agreed that the

plaintiffs' report was inadequate under Rule 26, but concluded that preclusion was not the

appropriate remedy. *Id.* at 397. Applying the factors outlined by the Second Circuit in *Softel*,

the court first found that the plaintiffs were unaware of the fact that their expert report might not

have complied with Rule 26 because the defendants never made any objections nor did they

request that the report be supplemented. *Id.* Additionally, the court found that plaintiffs' expert

testimony was essential to their case, and that even if the defendants could be prejudiced by the

13

deficient report, they had over a year to object to the report. Finally, the court noted the fact that the plaintiffs were willing to make their expert available for deposition by defendants prior to trial if necessary. *Id.*

Applying the *Softel* factors to the instant case, this Court reaches the same conclusion as was reached by the court in *Atkins*. With respect to the first *Softel* factor – the party's explanation for its inadequate disclosure – the Court notes that Plaintiffs raised no objections to the adequacy of Dr. Malguarnera's expert report for a period of nearly one and one-half years after receiving it. Plaintiffs did not seek more complete disclosure pursuant to Fed. R. Civ. P. 26, and never deposed Dr. Malguarnera or filed a discovery motion relating to Dr. Malguarnera during the discovery process. With respect to *Softel's* second factor – the importance of the testimony of the precluded witness – the Court finds that Dr. Malguarnera's report is crucial to Defendant's case on the issue of causation. With respect to *Softel's* third factor – the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony – the Court concludes that, even if Plaintiffs may be prejudiced by the inadequate report, any prejudice Plaintiffs might suffer is a result of their own decision to wait so long before objecting to the report. Finally, with respect to *Softel's* fourth factor, concerning the possibility of continuance, the Court notes that Defendant stated in its Response that it was willing to address any lingering issues concerning Dr. Malguarnera's opinions at a pre-trial *Daubert* hearing. Defendant's Objections at 6. Accordingly, this Court adopts Judge Reyes' recommendation that Plaintiffs' motion to exclude Defendant's expert witness be denied.

### III. Defendant's Motion for Summary Judgment

Defendant also advances several objections to Judge Reyes' recommendations regarding its motion for summary judgment. To lay the groundwork for a discussion of the merits of these

14

objections, this Court must start with basic summary judgment principles. Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A fact is "material" for these purposes when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor. *Niagara Mohawk Power Corp. v. Jones Chem., Inc.,* 315 F.3d 171, 175 (2d Cir. 2003).

The moving party bears the burden of demonstrating that no genuine issue of material fact exits. *See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970). If the movant meets this burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." *See* Fed. R. Civ. P. 56(e)(2); *Western World Ins. Co. v. Stack Oil.,* 922 F.2d 118, 121 (2d Cir. 1990). The non-movant cannot avoid summary judgment "through mere speculation or conjecture" or "by vaguely asserting the existence of some unspecified disputed material facts." *Western World,* 922 F.2d at 121 (internal quotations citations omitted). Thus, if the nonmoving party does not present specific facts showing that there is a genuine issue for trial, the moving party is entitled to a judgment as a matter of law, and summary judgment is appropriate. Fed. R. Civ. P. 56(c).

Under New York law, a plaintiff asserting a claim for defective design must show that (1) the product, as designed, posed a substantial likelihood of harm; (2) it was feasible to design the

15

product in a safer manner; and (3) the defective design was a substantial factor in causing the plaintiff's injury. *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 84 (S.D.N.Y. 2001). The first and second requirements for establishing a design defect claim are often combined and referred to as "the risk-utility test." *Id.* Under this combined test, the plaintiff "is under an obligation to present evidence that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner." *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 108 (1983). Under the third requirement, the plaintiff "is required to show that the defectively designed product caused his injury and that the defect was the proximate cause of the injury." *Id.* at 109 (citing *Micallef v Miehle Co., Div. of Miehle-Goss Dexter, Inc.*, 39 N.Y.2d 376, 386-87 (1976)). Usually, whether or not a defect was indeed a substantial factor is a matter for the trier of fact to decide. *See id.*

Applying these legal principles, Judge Reyes recommended denying Defendant's motion for summary judgment. Balancing "the foreseeability and gravity of the harm created by the product" against the feasibility of a safer design, Judge Reyes found that Plaintiffs offered specific evidence to show that a genuine issue of fact exists over whether Defendant's 1998 S-series concrete mixer was unreasonably dangerous under the risk-utility test. R&R at 15 (citing *Del Cid v. Beloit Corp.*, 901 F. Supp. 539, 545 (E.D.N.Y. 1995)). Judge Reyes rejected Defendant's claim that the ANSI and OSHA standards, to which Dr. Ojalvo referred in his expert report, are inapplicable, reasoning that Defendant itself had previously relied on at least one of these standards when concluding that the risk posed by the ladder's middle rung was acceptable. *Id.* at 16. In addition, the magistrate judge found that post-manufacturing changes made by Defendant after Mr. Rupolo's accident could be used to prove that alternative designs were feasible. *Id.* at 18.

16

As to the third requirement for establishing a design defect claim, Judge Reyes found that Plaintiffs had made a sufficient showing of causation. *Id.* at 19. Citing Second Circuit case law, the magistrate judge noted that Plaintiffs did not have to show that the ladder was "the sole or even dominant cause" of Mr. Rupolo's injuries. *Id.* at 18. Rather, the ladder could be the proximate cause of the accident if it was a substantial factor in bringing about Mr. Rupolo's injuries. *Id.* at 19 (citing *Caruolo v. John Crane, Inc.*, 226 F.3d 46 (2d Cir. 2000)).

### *Defendant's Objections to the R&R*

Defendant objects to Judge Reyes' conclusion that genuine issues of material fact exist both with respect to whether the subject ladder was unreasonably dangerous and with respect to whether the design defect was a proximate cause of the accident. With respect to Judge Reyes' dangerousness analysis, Defendant first argues that the ANSI and OSHA standards on which the magistrate judge relied are inapplicable to a vehicle-mounted ladder. Defendant's Objections at 6. Second, Defendant argues that Judge Reyes erred in relying on the fact that Defendant was aware that at least some risk was posed by the support bracket position as evidence of the ladder's dangerousness. Defendant's Objections at 8 (citing R&R at 16). "Some risk" Defendant argues, is insufficient to prove that the product is defectively designed. Third, Defendant argues that Judge Reyes found only that alternative designs were feasible, but that there was no evidence that those alternative designs were safer. Defendant's Objections at 10. Specifically, Defendant argues that "Dr. Ojalvo concededly did no testing whatsoever concerning any of the 'alternative designs' that he claims would have prevented the subject accident." *Id.* at 10.

With respect to causation, Defendant objects to Judge Reyes' finding that Plaintiffs have adduced evidence which, if credited, would establish that the defective design of Defendant's

17

ladder caused Mr. Rupolo's injuries. Defendant claims that Judge Reyes found only that it was "possible" that the ladder's design caused the injury, and that a "mere possibility" is insufficient to prove that the alleged defects did in fact cause the accident. Defendant's Objections at 2 (citing *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 434 (N.Y. 1980)). Defendant claims that the uppermost rung on the ladder was slippery prior to Mr. Rupolo's fall due to some substance on the rung, and that with the presence of such slippery substance, Mr. Rupolo could have fallen off any other alternative design. Defendant's Objections at 3. Accordingly, Defendant contends that "nothing, whether in plaintiff's testimony or in anything else cited in opposition to the underlying motion, rules out the slippery nature of his own boots as the sole proximate cause of his accident." Defendant's Objections at 4 (citing *Caruolo v. John Crane, Inc.*, 226 F.3d 46 (2d Cir. 2000)).

### *Dangerousness*

In light of the entire record, the Court finds that Plaintiffs have adduced evidence which, if credited by the finder of fact, would be sufficient to establish a *prima facie* case of negligence and strict liability based on the theory of design defect.[4]  Plaintiffs have established that a genuine issue of fact exists regarding whether the 1998 Oshkosh S-Series concrete mixer was unreasonably dangerous. With respect to Defendant's first argument, the applicability of the ANSI and OSHA standards is a factual question. Compliance or lack of compliance with such regulations is not dispositive of the issue of a design defect, but may provide some evidence of such a defect. *Del Cid*, 901 F.Supp. at 548 n.7; *Montalvo v. Rheem Textile Sys., Inc.*, No. 86 Civ.

---

[4] "In a design defect case, there is almost no difference between a *prima facie* case in negligence and one in strict liability." *Searle v. Suburban Propane Div. of Quantum Chem. Corp.*, 700 N.Y.S.2d 588, 591 (N.Y. 2000). Thus, the negligence and strict liability claims will be analyzed together.

9501, 1991 WL 52777, at *3 (S.D.N.Y. Apr. 4, 1991) ("Whether a product meets relevant safety regulations is only one indicium of whether a product is designed with reasonable care."). Accordingly, as Judge Reyes correctly concluded, it should be for the fact-finder to determine whether Dr. Ojalvo's reliance on the ANSI and OSHA standards is appropriate. R&R at 16-17.

The Court also rejects Defendant's second argument: that Judge Reyes erroneously relied on Defendant's awareness of the risk posed by the support bracket's position to prove the ladder's dangerousness. In making this argument, Defendant attempts to analogize this case to *Stalker v. Goodyear Tire & Rubber Co.,* 874 N.Y.S.2d 632, 635 (N.Y. App. Div. 2009), which holds that "a bare showing of risk or hazards known by the manufacturer or in the industry falls well short of the mark in proving that a specific product is not reasonably safe." Defendant's Objections at 9. However, *Stalker* holds only that "a factual issue regarding design defect is not established by merely pointing to efforts within the industry to make a safer product, without proving some detail as to how the current product is not reasonably safe and how a feasible alternative would be safer." *Stalker,* 874 N.Y.S.2d at 635. In this case, Plaintiffs are not relying *solely* on Defendant's awareness of risks posed by the ladder's design. Rather, Plaintiffs are prepared to offer evidence that Dr. Ojalvo performed specific tests, measurements and comparisons to prove that the ladder's design was inherently defective. Ojalvo Aff. ¶ 16. Accordingly, Defendant's reliance on *Stalker* is misplaced.

Finally, the Court rejects Defendant's third argument: that Judge Reyes erred in relying on the alternative designs suggested by Dr. Ojalvo as evidence of the ladder's dangerousness, notwithstanding Dr. Ojalvo's alleged failure to prove that these designs were safer than the design of the subject ladder. Defendant's Objections at 10. To be sure, Plaintiffs carry the burden of showing that the alternative designs are not only feasible, but also safer. *Urena v. Biro Mfg. Co.,* 114 F.3d 359, 365 (2d Cir. 1997). However, Plaintiffs have provided the

19

testimony of Dr. Ojalvo, explaining that "Mr. Rupolo never could have slipped vertically, as he did in this case, on the alternative ladder designs contained on the Terex-Advance cement truck, the Phoenix cement truck or the 2002 support bracket modification of the Oshkosh ladder, because they each provided flat level surfaces to support the climber's weight." Ojalvo Aff. at ¶ 49. Contrary to Defendant's argument that Dr. Ojalvo's alternative design theory is based on untested opinions, there is evidence that Dr. Ojalvo inspected the truck and observed that the support bracket prevented Mr. Rupolo from placing his left foot flat on the top rung of the ladder. He then performed calculations and determined that, under some conditions, the reduced coefficient of friction resulting from the placement of the bracket was insufficient to resist the force of gravity on Mr. Rupolo's foot when it rested at an angle on the top rung. *Id.* at ¶ 33.

Moreover, it is immediately apparent from the photographs submitted by Plaintiffs that alternative designs considered by Dr. Ojalvo allow a climber to place his foot flat on the top rung of the ladder. From these photographs, a reasonable juror could infer that the alternative designs are safer than the subject ladder. This Court, therefore, concurs with Judge Reyes' findings that Plaintiffs have adduced sufficient evidence with respect to whether alternative designs were not only feasible, but also safer.

### *Causation*

Turning next to Defendant's objection regarding Judge Reyes' conclusion on causation, this Court finds that Plaintiffs, through their expert Dr. Ojalvo, have adduced evidence that if credited, would be sufficient to establish the necessary causation between the alleged defect and the resulting injury. After inspecting the truck, Dr. Ojalvo found that the support bracket "prevented Mr. Rupolo from placing the ball of his left foot flat on the top rung of the ladder, thus frustrating both the advantages in the design of the boot and the slip resistant perforations in the rungs of the ladder which enhance the grip of the operator's work boot." Ojalvo Aff., ¶ 16.

Dr. Ojalvo's inspections further revealed that "[b]y placing the bracket where it was, Oshkosh prevented Mr. Rupolo from placing his foot flat . . . [and] forced Mr. Rupolo to rest his foot at a 28° angle with the flat horizontal plane." *Id.*, ¶ 35. Dr. Ojalvo consequently concluded:

> [Mr. Rupolo's] 'slippage' was caused by the force of gravity on [his] . . . foot as [it] . . . rested on an inclined surface . . . . [T]he coefficient of friction was too low to prevent the force of gravity from forcing Mr. Rupolo's foot to slip down."

*Id.*

Contrary to Defendant's assertions, Plaintiffs need not prove that the defective design is the sole proximate cause of Mr. Rupolo's injury. Rather, "[i]n order to prevail at the summary judgment stage, *the defendant* must show that the plaintiff's conduct was the 'sole proximate cause of [his or her] injuries.'" *Donald v. Shinn Fu Co.*, No. 99-CV-6397 (ARR), 2002 WL 32068351, at *6 (E.D.N.Y. Sep. 4, 2002) (emphasis added) (citing *Amatulli et al. v. Delhi Construction Corp.*, 77 N.Y.2d 525, 534 (1991)). Accordingly, Plaintiffs do not have to prove that the slippery nature of Mr. Rupolo's own boots was not the proximate cause of his injuries. All that is required from Plaintiffs is to present admissible evidence upon which the trier of fact could reasonably find that the design defect in Defendant's ladder caused Mr. Rupolo's injuries. *See, e.g., Deterian v. Felix Contracting Corp.* 51 N.Y.2d 308, 315 (1980) (to carry the burden of proving a *prima facie* case, the plaintiff must generally show that the defendant's negligence was a substantial cause of the events which produced the injury); *see also Donald*, 2002 WL 32068351, at *6 (holding that after the plaintiff had presented admissible evidence upon which the fact-finder could reasonably conclude that the defects were the cause of the injuries, the question whether a defect was indeed a substantial factor in causing an accident is a question of fact). Plaintiffs have met this burden. Accordingly, this Court concurs with Judge Reyes' conclusion that Plaintiffs made a sufficient showing to withstand summary judgment on the

issues of whether the subject ladder was unreasonably dangerous and caused Mr. Rupolo's accident. Defendant's motion for summary judgment was properly denied.

## IV. Plaintiffs' Motion for Trial by a Jury

Plaintiffs' remaining objections relate to that portion of the R&R in which Judge Reyes recommended that this Court deny Plaintiffs' motion for a trial by jury. However, as noted at pp. 4-5, *ante*, this Court agrees with Plaintiffs' argument that this Court never referred this motion to Judge Reyes. Accordingly, this Court need not consider the portion of the R&R regarding this motion or Plaintiffs' objections thereto. Rather, the Court will engage in its own independent analysis of Plaintiffs' motion to file a late jury demand.

At all time relevant herein, the Federal Rules of Civil Procedure provided that a party could obtain a jury trial as a matter of right by "serving the other parties with a written demand . . . no later than 10 days after the last pleading directed to the issue is served . . . ." Fed. R. Civ. P. 38(b)(1).[5] A party that fails to properly serve and file such a demand waives its right to a jury trial. *See* Fed. R. Civ. P. 38(d).[6]

---

[5] On December 1, 2009, Rule 38(b)(1) was amended to extend this time limitation to 14 days after the last pleading directed to the issue is served.

[6] Although Rule 81(c)(3) of the Federal Rules of Civil Procedure contains special provisions relating to jury demands in removed case, none of the three scenarios contemplated by that rule is presented by the facts in this cases. The first scenario involves a situation in which all necessary pleadings have been served before removal. In this case, however, the notice of removal was filed before Defendant filed an answer. The second scenario covers the situation in which a party requests a jury before removal in compliance with state law. That did not occur here. The third scenario applies when the law of the state from which the action was removed does not require the parties to expressly demand a trial by jury. As discussed in more detail below, New York law requires that parties expressly demand a trial by jury. N.Y.C.P.L.R. §4102. As a result, this case falls within a "gray area" not covered by Rule 81(c). *Cascone v. Ortho Pharmaceutical Corp.*, 702 F.2d 389, 391 (2d Cir. 1983) (citing *Higgins v. Boeing Co.*, 526 F.2d 1004, 1007 (2d Cir. 1975)).

In this case, Plaintiffs concede that they did not serve and file a jury trial demand within 10 days of being served with Defendant's answer and have, therefore, waived their right to a jury trial. However, Plaintiffs' counsel states that "over ninety-nine percent of [his] practice has been in the New York State Court System" and that he "was totally unfamiliar with the [federal] rules concerning the time to file a jury demand." Memorandum of Law in Support of Motion for Permission to File Late Jury Demand on Behalf of Plaintiffs, ("Plaintiffs' Late Jury Motion"), at 18-19. Noting "the wide disparity between New York State Court practice and Federal Court practice" and asserting that "it is not totally uncommon for a New York State Court practitioner to unintentionally fail to file a timely jury demand," *id.* at 19, Plaintiffs urge this Court to exercise its discretion under either Rule 39(b) or Rule 6(b) and grant their late jury demand.

### *Rule 39(b)*

Rule 39(b) of the Federal Rules of Civil Procedure gives a district judge discretion to grant a jury trial despite a party's failure to make a timely demand. *Cascone v. Ortho Pharmaceutical Corp.*, 702 F.2d 389, 391 (2d Cir. 1983). It provides:

> Issues on which a jury trial is not properly demanded are to be tried by the court. But the court may, on motion, order a jury trial on any issue for which a jury might have been demanded.

Fed. R. Civ. P. 39(b). Although the language of Rule 39 itself "does not articulate any restriction on the district court's discretion and commentators have argued for liberality, . . . decisional law has imposed limitations." *Cascone*, 702 F.2d at 392 (citations omitted). In *Noonan v. Cunard S.S. Co.,* 375 F.2d 69 (2d Cir. 1967), the Second Circuit noted that "the settled course of decision had placed a gloss upon the Rule," requiring a moving party to make a "showing beyond mere inadvertence" in order to justify relief under Rule 39. *Noonan*, 375 F.2d at 70.

This judicial gloss does not prohibit granting a Rule 39(b) motion in cases in which a state action was removed to federal court, and the plaintiff inadvertently failed to demand a jury trial because of plaintiff's counsel's lack of familiarity with federal practice. *Cascone*, 702 F.2d at 392 ("In removed cases, the argument for applying the rigid *Noonan* constraints on the district court's discretion is simply not as strong."). However, inadvertence alone is not a sufficient reason for permitting a late jury demand in all removed cases. Rather, the Second Circuit has endorsed the view that courts "ought to approach each application under Rule 39(b) with an open mind and an eye to the factual situation in that particular case . . . ." *Cascone*, 702 F.2d at 392 (quoting 9 C. Wright & A. Miller, *Federal Practice & Procedure*, § 2334 at 116 (1971)).

In engaging in this fact-specific analysis, the *Cascone* Court relied on the decision in *Higgins v. Boeing Co.*, 526 F.2d 1004, 1007 (2d Cir. 1975). However, although it noted that "*Higgins* . . . weighed a number of factors," 702 F.2d at 392, the *Cascone* Court did not list those factors. Rather, the Court stated:

> In *Higgins* this court weighed a number of factors. We noted the customary New York practice, including the discretion granted by the state statute which comported with Rule 39(b). Moreover, the case, one for personal injuries, was traditionally tried by a jury, and the parties had proceeded for some time on the assumption that the matter would not be a bench trial. Finally, the defendant had acquiesced in the jury request and would not be prejudiced by that court's action in granting the plaintiff's untimely demand.

*Id.* The *Cascone* Court also did not mention that portion of the *Higgins* opinion in which the Court noted that "there are conceivably other factors" that might be relevant, and expressed reluctance to order that a district court exercise its discretion in any particular manner. *Higgins*, 526 F.2d at 1007. Moreover, the *Cascone* Court offered no guidance concerning how the factors

24

should be weighted, because the district court in that case "found that all the *Higgins* factors were present." *Cascone*, 702 F.2d at 393.

In the wake of *Cascone*, district courts have distilled the above-quoted discussion of *Higgins* into a list of factors. Most, if not all, courts include in that list the following factors: 1) whether the case is one that is traditionally tried by a jury; 2) whether the parties assumed that the matter would not be tried by a judge; and 3) whether granting a jury trial would prejudice the rights of the adverse party. However, some courts include other factors, such as "customary state practice," *Jean ex rel. Vincent-Jean v. 536 Realty Associates*, No. 97-CV-5075, 2000 WL 264346, at *2 (E.D.N.Y. Jan. 6, 2000); *Jiminez v. Sullivan*, No. 03-CV-7293 (JCF), 2004 WL 3019490, at *2 (S.D.N.Y. Dec. 30, 2004); whether "state law would have allowed a jury trial demand late in the proceedings," *CPH Intern., Inc. v. Phoenix Assur. Co. of N.Y*, No. 92-CV-2729, 1993 WL 485356, at *2 (S.D.N.Y. Nov. 24, 1993); and whether the state court "has broad discretion in granting untimely jury demands." *Quinlan v. Stryker Corp.*, No. 09 Civ. 7284 (HB), 2009 WL 4729879, at *2 (S.D.N.Y. Dec. 10, 2009); *Ammirato v. Duraclean Intern., Inc.*, No. CV 07-5204 (ARL), 2009 WL 3823342, at *1 (E.D.N.Y. Nov 16, 2009); *Zhao v. State Univ. of N.Y.*, No. 04-CV-210 (JFB), 2008 WL 2949384, at *2 (E.D.N.Y. July 15, 2008).

Although the district court in *Cascone* found that all the factors favored permitting the movant to file a late demand for a jury trial, courts "do not appear to have read *Cascone* as requiring every factor to be in the movant's favor." *Czenszak v. Director, Church Wardens and Vestrymen of Trinity Church*, 871 F.Supp. 201, 203 (S.D.N.Y. 1994). No courts have expounded on precisely how to perform that balancing, but several courts have expressed the view that prejudice to the adverse party is the most important or significant of the *Higgins* factors. *See, e.g., Jiminez*, 2004 WL 3019490, at *2 (prejudice is "the most important" factor);

*Vincent v. AST Research, Inc.*, 199 F.R.D. 95, 97 (N.D.N.Y. 2001) (prejudice "is arguably the most significant *Higgins* factor"); *Jean ex. rel. Vincent-Jean*, 2000 WL 264346, at *3 (prejudice is "clearly the most significant *Higgins* factor") (quoting *Turkenitz v. Metromotion, Inc.*, No. 97 Civ. 2513 (AJP)(JGK), 1997 WL 773713, at *7 (S.D.N.Y.Dec. 12, 1997)).

In balancing these factors, this Court will start by considering the three factors which appear in most, if not all, courts' lists of *Higgins* factors. The first of these factors – whether the case is one that is traditionally tried before a jury – militates in favor of permitting a late jury demand in this case. Products liability actions are "typically tried to a jury." *Quinlan*, 2009 WL 4729879, at *3 (citing cases); *see also AST Research, Inc.*, 199 F.R.D. at 97 ("products liability case seeking recovery for personal injuries . . . is . . . normally tried to a jury").

With respect to the second factor – whether the parties assumed that there would be a bench trial – the record suggests that defendant's counsel assumed that this case would be tried by a judge, while plaintiffs' counsel assumed that it would be tried before a jury. Defendant's counsel's assumption was evidenced by "contentions submitted [to plaintiff's counsel] for inclusion in this Court Joint Pretrial Order." Letter to Hon. Ramon E. Reyes, Jr., from Robert J. Poblete, dated Jan. 22, 2007 (the "Poblete Letter"), at 2.[7] Plaintiffs' counsel's assumption is evidenced by Poblete Letter itself, in which plaintiffs' counsel states that it was only upon receiving Defendant's proposed Joint Pretrial Order, "which indicated [that] . . . this was to be a non-jury trial," that he "realized [he] should have demanded a jury immediately after Defendant

---

[7]This Court's Individual Motion Practices provide that "within sixty (60) days from the date for the completion of discovery in a civil case, the parties shall submit to the Court . . . a joint pretrial order, which shall include . . . [a] statement by each party as to whether the case is to be tried with or without a jury . . . ." Individual Motion Practices of Judge Sandra L. Townes, ¶IV.A.5.

removed this case from State Court." *Id.* Since the parties did not share a common assumption, this factor does not militate either for or against a jury trial.

With respect to the third factor – whether granting a jury trial would prejudice the non-movant – Defendant's counsel states only that he would have deposed various witnesses had he known this case would be tried to a jury. Specifically, Defendants' counsel states that "the defense did not go to the expense of deposing" Plaintiffs' co-workers, employer, doctors, economist, and life care planner and Kristopher Seluga, the "other author of plaintiff's [*sic*] expert report." Memorandum of Law in Opposition to Plaintiffs' Motion to File a Late Jury Demand ("Defendant's Jury Trial Memo"), at 7. Defendant's counsel implies that Defendant would have deposed these witnesses in order to develop prior inconsistent statements that could be used at trial, stating:

> Before a court, we remain confident that we have the tools to expose these individuals where they seek to exaggerate or embellish the truth. Exposing witnesses before a jury, however, is a different task, calling for different tools, developed, typically, in a pretrial deposition.

*Id.*

Defendant's argument, however, does not convince this Court that Defendant will be substantially prejudiced if this Court grants Plaintiffs' motion for trial by jury. First, Defendants do not explain why its counsel's decision not to depose these witnesses hinged on whether the case would be tried to a jury. As Magistrate Judge Francis aptly noted in a case in which a defendant claimed to have "made several strategic decisions regarding evidence" based on the assumption that there would be a bench trial, "it is hard to imagine what evidence would be illuminating to a jury but not to a judge." *Jiminez*, 2004 WL 3019490, at *2.

27

Second, the credibility of the fact witnesses identified by Defendant should not prove central to the trial. Even assuming that Mr. Rupolo's co-workers and employer observed the accident, the manner in which Mr. Rupolo was injured is not in serious dispute. Rather, the parties disagree as to what caused Mr. Rupolo to fall.

Mr. Rupolo's doctors are highly unlikely to have any independent recollection regarding how they treated Mr. Rupolo following his 2002 fall. Accordingly, in the unlikely event that they were called to testify, Mr. Rupolo's doctors would be expected to offer testimony consistent with their medical records. If this proved not to be the case, the doctors could be effectively impeached through use of those records.

With respect to expert witnesses, a defendant is entitled to a written report encapsulating the anticipated testimony of each witness that the plaintiff intends to use at trial. *See* Fed. R. Civ. P. 26(a)(2)(B). That report is required contain, *inter alia*, a complete statement of all opinions the witness will express, the basis and reasons for those opinions, the data or other information considered by the witness in forming those opinions, any exhibits that will be used to summarize or support the opinions, the witnesses qualifications, and a statement regarding the compensation the witness will receive for testifying. *Id.* Assuming an expert's report complies with these requirements, it should contain all the information a defendant needs to conduct a meaningful cross-examination at trial. Accordingly, this Court does not see why Defendant would need to depose Mr. Seluga, Plaintiffs' economist or life care planner in order to prepare for a jury trial. However, to the extent that Defendant needs further discovery to prepare for a jury trial, Defendant may apply to Judge Reyes for permission to re-open discovery.[8]

---

[8]Since this case is almost five years old, this Court trusts that Defendant would not make such an application lightly. However, if Defendant can demonstrate a genuine need to re-open

Since two of the three *Higgins* factors weigh in Plaintiffs' favor, this Court grants Plaintiff's motion for a trial by jury. This decision is entirely consistent with "customary state practice." First, New York law does not require a party to demand a jury trial until very late in the proceedings. A party must either include his demand for a jury trial in its note of issue or, if it is served with a note of issue that does not contain such a demand, serve a demand within 15 days after being served with the note of issue. N.Y.C.P.L.R. § 4102(a). Since "the filing of a 'note of issue' is the thing that gets the case onto the court's 'calendar' to await trial," David D. Siegel, Practice Commentaries to N.Y.C.P.L.R. § 3402 (McKinney's 2007), court rules typically require that a "certificate of readiness" accompany the note of issue. David D. Seigel, N.Y. Practice § 369 (4th ed.) Accordingly, even though N.Y.C.P.L.R. § 3402(a) provides that a note of issue may be filed "[a]t any time after issue is first joined, or at least forty days after service of a summons has been completed irrespective of joinder of issue," the note of issue typically is not filed until after completion of discovery.

Second, New York law affords courts broad discretion in granting untimely jury demands. If no party demands a jury trial as provided in N.Y.C.P.L.R. § 4102(a), the right to trial by jury is deemed waived by all parties. N.Y.C.P.L.R. § 4102(a). However, N.Y.C.P.L.R. § 4102(e) provides that a "court may relieve a party from the effect of failing to comply with this section if no undue prejudice to the rights of another party would result." Therefore, under New York law, not only would Plaintiffs' demand for a jury trial have been timely, but permission to

---

discovery, this Court would be inclined to grant such application to avoid any prejudice to Defendant. If Defendant makes such a motion, Plaintiffs shall not be heard to argue that they are prejudiced by the resulting delay.

file a late jury trial demand would likely have been granted under § 4102(e) because Defendant would not suffer undue prejudice.[9]

### *CONCLUSION*

For the reasons set forth above, this Court accepts Judge Reyes' recommendations concerning Plaintiffs' motion to exclude Defendant's expert witness and Defendant's motion for summary judgment. This Court agrees with Plaintiffs' contention that the Rule 39(b) motion for a jury trial was never formally referred to Judge Reyes, and grants Plaintiffs' motion for a trial by jury.

**SO ORDERED.**

s/Hon. Sandra L. Townes

ŚANDRA L. TOWNES
United States District Judge

Dated: May 28, 2010
       Brooklyn, New York

---

[9]Because this Court grants Plaintiffs' motion for a trial by jury under Fed. R. Civ. P. 39(b), there is no need to consider Plaintiffs alternative argument under Fed. R. Civ. P. 6(b).